IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 06-cv-00625-WDM-CBS

TRACEY SCOTT MARTIN,
        Plaintiff,
v.

W. SHERROD, Warden,
G.T. KRAUS, M.D.,
M.C. IPPOLITO, MPAC, and
HERIBERTO GARZA, FMG,
        Defendants.
_____

ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE
_____

Magistrate Judge Craig B. Shaffer

        This civil action comes before the court on: (1) Mr. Martin's Motion for

Preliminary Injunction (filed September 22, 2006) (doc. # 27);  (2) Defendants' Motion

to Dismiss (filed September 25, 2006) (doc. # 29); and (3) Mr. Martin's failure to comply

with Title 28 U.S.C. § 1915.  Pursuant to the Order of Reference filed June 1, 2006

(doc. # 13) and the memoranda dated September 22, 2006 (doc. # 28) and September

25, 2006 (doc. # 30), these matters are before the Magistrate Judge.  The court has

reviewed the Motions, Defendants' Response in Opposition to Motion for Preliminary

Injunction (filed October 12, 2006) (doc. # 35), Mr. Martin's Response in Opposition to

Motion to Dismiss (filed October 24, 2006) (doc. # 36), Mr. Martin's "Affidavit in Support

of the Plaintiff's Motion for Preliminary Injunction" (filed January 8, 2007) (doc. # 41),

the pleadings, the exhibits, the entire case file, and the applicable law and is

sufficiently advised in the premises.

I.      Statement of the Case

Mr. Martin is a prisoner incarcerated at the Federal Correctional Institution ("FCI") in Englewood, Colorado.  Proceeding *pro se*, Mr. Martin brought this action pursuant to *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants were "deliberately indifferent to my serious illness" in violation of his Eighth Amendment rights.  (Complaint at p. 3 of 35). Specifically, Mr. Martin claims that he suffers from testicular atrophy, requiring testosterone treatment, and that the staff at FCI Englewood denied him his testosterone treatment "cold turkey" when they would no longer fill his testosterone prescription. (Complaint at pp. 5-7 of 35).  As relief, Mr. Martin requests monetary damages, punitive damages, and injunctive relief.  (*See* Complaint at p. 8).

II.     Motion for Preliminary Injunction

Mr. Martin has moved for a preliminary injunction.  Mr. Martin seeks "a Court Order requiring the Federal Bureau of Prisons to fulfill the recommendation of medical treatment written by the specialist on exhibit A attached to this motion."  (*See* doc. # 27).

In order to be entitled to a preliminary injunction pursuant to Fed. R. Civ. P.  65, the moving party must establish: "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3)

the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." *Kikumura v. Hurley,* 242 F.3d 950, 955 (10th Cir. 2001) (citation omitted).  "As a preliminary injunction is an extraordinary remedy, the right to relief must be clear and unequivocal."  *SCFC ILC, Inc. v. Visa USA, Inc.*, 936 F.2d 1096, 1098 (10th Cir. 1991) (citation omitted).

"Because the limited purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held, we have identified the following three types of specifically disfavored preliminary injunctions . . . : (1) preliminary injunctions that alter the status quo; (2) mandatory preliminary injunctions; and (3) preliminary injunctions that afford the movant all the relief that it could recover at the conclusion of a full trial on the merits."  *Schrier v. Univ. of Colo.,* 427 F.3d 1253, 1258-59 (10th Cir. 2005) (internal quotation marks and citations omitted).  "Such disfavored injunctions must be more closely scrutinized to assure that the exigencies of the case support the granting of a remedy that is extraordinary even in the normal course." *Schrier*, 427 F.3d at 1259 (internal quotation marks and citation omitted).

Mr. Martin seeks a mandatory injunction requiring Defendants to fulfill the recommendation made by Dr. Eric S. Albright that if an MRI test performed on Mr. Martin were negative, some form of testosterone treatment should resume but that testosterone levels should be rechecked after six weeks.  (*See* "Exhibit A" to Mr. Martin's Motion (doc. # 27 at p. 2 of 4)).  The relief sought would alter rather than

3

preserve the status quo.  The relief sought would also provide Mr. Martin substantially

all the relief he may recover after a full trial on the merits.  For these reasons, the

injunctive relief sought by Mr. Martin "constitutes a specifically disfavored injunction"

that "must be more closely scrutinized." *Schrier,* 427 F.3d at 1259, 1261.


      A.      Substantial Likelihood of Success on the Merits of the Case

      Dr. G. Thomas Kraus, the Clinical Director at FCI Englewood, first examined Mr.

Martin on May 14, 2005 and became aware of Mr. Martin's history of taking

testosterone, a "class C-3" controlled substance.  (*See* Declaration of G. Thomas

Kraus, M.D. (doc. # 35-2 at p. 2 of 11) ¶ 6).  Dr. Kraus was concerned about the

amount of testosterone that Mr. Martin had been taking and that Mr. Martin had refused

injectable testosterone and insisted on the pill form. *Id.* After consultation with an

endocrinologist and a clinical pathologist, Dr. Kraus stopped Mr. Martin's testosterone

in August of 2005 in order to determine whether Mr. Martin's body could produce

testosterone on its own.  (*See* Declaration of G. Thomas Kraus, M.D. (doc. # 35-2 at p.

3 of 11) ¶ 8).  It could "take several months to a year" to determine whether Mr. Martin

could produce testosterone on his own. *Id.* Mr. Martin was evaluated on May 3, 2006

by Dr. Eric S. Albright of Endocrinology Associates, who reported that Mr. Martin

"demonstrated excessive testosterone based on his clinical appearance and symptom

history." (*See* Exhibit 1 (doc. # 35-2) at p. 6 of 11).  Dr. Albright concluded that Mr.

Martin's current "clinical symptoms are very mild and his clinical exam is unremarkable

for androgen deficiency.  He has good facial hair growth, shaves every 1-2 days,

excellent muscle tone and strength [sic]."  (*See* Exhibit 1 (doc. # 35-2) at p. 7 of 11).

Dr. Albright noted Mr. Martin's past excessive use of testosterone and wrote Mr. Martin

no prescriptions on that date.  (*See* Exhibit 1 (doc. # 35-2) at p. 7 of 11).

Dr. Kraus reviewed Mr. Martin's laboratory results and Dr. Albright's notes.  (*See*

Exhibit 2 (doc. # 35-2) at pp. 8-10 of 11).  Dr. Kraus further consulted with Dr. Albright

on June 6, 2006.  On June 20, 2006, Dr. Albright noted that "it would be reasonable to

wait another six months and reevaluate [Mr. Martin's] testosterone values because of

his atypical and excessive testosterone replacement prior to his incarceration."  (*See*

Exhibit 4 (doc. # 35-2) at p. 11 of 11).

Dr. Kraus "ordered that appropriate lab work be drawn on November 13, 2006."

(*See* Declaration of G. Thomas Kraus, M.D. (doc. # 35-2 at p. 4 of 11) at ¶ 15).  Dr.

Kraus discovered that Mr. Martin "had a serious illness involving his liver that could

result in liver cancer.  This was of concern because the oral testosterone he was taking

also increases the risk of liver cancer.  Taking it by injection or through the skin,

however, does not increase this risk."  (*See* Declaration of G. Thomas Kraus, M.D.

(doc. # 35-2) at ¶ 16).

There is only Mr. Martin's conclusory allegation and no evidence before the

court that Mr. Martin needs testosterone treatment at this time.  Dr. Albright, on whose

recommendation Mr. Martin relies, concluded in a memorandum dated June 20, 2006

that "it would be reasonable to wait another six months and reevaluate [Mr. Martin's]

testosterone values because his atypical and excessive testosterone replacement prior

to his incarceration [sic]."  The evidence shows that Dr. Kraus "continue[s] to monitor

Mr. Martin's medical issues and concerns," schedule "further lab work," and consult with an outside endocrinologist as necessary." (*See* Declaration of G. Thomas Kraus, M.D. (doc. # 35-2 at p. 5 of 11) ¶ 17).  Mr. Martin has not demonstrated a sufficient likelihood of success on the merits.

       B.    Irreparable Harm

Next, Mr. Martin must show that he will suffer irreparable injury if his request for preliminary injunction is denied.  "To constitute irreparable harm, an injury must be certain, great, actual and not theoretical."  *Schrier*, 427 F.3d at 1267 (citation omitted).  Even "serious or substantial harm is not irreparable harm."  *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).  "The party seeking injunctive relief must show that the injury complained of is of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm."  *Schrier*, 427 F.3d at 1267 (internal quotation marks and citation omitted).

The record before the court demonstrates no present threat of irreparable harm. *See Schrier*, 427 F.3d at 1267 ("The purpose of a preliminary injunction is not to remedy past harm but to protect plaintiffs from irreparable injury that will surely result without their issuance").  Dr. Albright, on whose recommendation Mr. Martin relies, concluded that "it would be reasonable to wait another six months and reevaluate [Mr. Martin's] testosterone values . . . ."  Mr. Martin fails to demonstrate that he will suffer irreparable injury without the injunctive relief he seeks.

C.     Balance of Parties' Interests and Whether Adverse to the Public Interest

Next, Mr. Martin must demonstrate that "the threatened injury. . . outweighs whatever damage the proposed injunction may cause the opposing party" and that "the injunction, if issued, would not be adverse to the public interest."  *Schrier,* 427 F.3d at 1258.  Mr. Martin has not addressed or demonstrated whether the alleged harm to him outweighs the potential damage the injunction may cause Defendants or whether an injunction would not be adverse to the public's interest.  Mr. Martin requests that he be prescribed an oral medication that is classified as a controlled substance and bears a risk of abuse as well as a risk to his health.  (*See* Declaration of G. Thomas Kraus, M.D. (doc. # 35-2) at ¶ 16).  Mr. Martin has failed to demonstrate these two requisite elements.

Because Mr. Martin has failed to satisfy the four prerequisites, his request for a preliminary injunction is properly denied.


III.    Defendants' Motion to Dismiss

Citing both Fed. R. Civ. P. 12(b)(1) and 12(b)(6), Defendants argue that Mr. Martin has failed to state a claim that Defendants were deliberately indifferent to his serious medical need in violation of the Eighth Amendment.

Rule 12(b)(6) states that a court may dismiss a complaint for "failure to state a claim upon which relief can be granted."  When reviewing a Rule 12(b)(6) motion to dismiss, the court accepts the well-pleaded allegations of the complaint as true and construes them in the light most favorable to the plaintiff.  *Ramirez v. Dep't of*

*Corrections*, 222 F.3d 1238, 1240 (10th Cir.2000) (citation omitted).  A complaint should not be dismissed under Rule 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  *Ramirez*, 222 F.3d at 1240 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).

*Pro se* pleadings are to be construed liberally. *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972).  However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991).

A.      Official Capacity

Mr. Martin has not specifically alleged whether he is suing the Defendants in their individual or official capacities.

A claim for damages against a federal defendant in his official capacity is treated as a claim against the United States.  *Weaver v. United States*, 98 F.3d 518, 520 (10th Cir. 1996).  "It is well settled that the United States and its employees, sued in their official capacities, are immune from suit, unless sovereign immunity has been waived." *Atkinson v. O'Neill*, 867 F.2d 589, 590 (10th Cir. 1989) (citing *Kentucky v. Graham*, 473 U.S. 159, 165-67, 105 S. Ct. 3099, 3105 (1985)).  The United States has not waived sovereign immunity as to claims such as that alleged by Mr. Martin.  The doctrine of sovereign immunity precludes a *Bivens* action against the United States or any agency thereof.  *Hatten v. White*, 275 F.3d 1208, 1210 (10th Cir. 2002).  To the extent that Mr.

8

Martin may be suing Defendants in their official capacities, his claim is precluded.

B.      Individual Capacity

In *Bivens*, the Supreme Court recognized "an implied private right of action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Correctional Services Corporation v. Malesko*, 534 U.S. 61, 66 (2001).  "To establish a *Bivens* cause of action, a party must have some evidence to support finding that [a] federal agent acting under color of such authority violated some cognizable constitutional right of plaintiff." *Hron v. Jenkins*, 15 F. Supp. 2d 1082, 1085 (D. Kan. 1998) (citing *Bivens,* 403 U.S. at 388).  "If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a Bivens claim against the offending individual officer, subject to the defense of qualified immunity." *Malesko*, 534 U.S. at 72.

C.      Personal Participation

Personal participation is an essential allegation in a *Bivens* action.  A defendant may not be held liable merely because of his or her supervisory position.  *See Kite v. Kelley*, 546 F.2d 334, 336-38 (10th Cir. 1976) (plaintiff suing federal officials for constitutional violations under *Bivens* must show affirmative link between defendant's conduct and the alleged constitutional deprivation);  *Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1157 (10th Cir. 2001) (for § 1983 claim, affirmative link between the defendant's conduct and any constitutional violation "must be alleged in the complaint as well as proven at trial").

Defendant Sherrod argues that Mr. Martin has not alleged facts sufficient to state a *Bivens* claim against him.  Mr. Martin makes no allegations against Defendant Sherrod beyond naming him as a Defendant.  Mr. Martin merely argues in his Response that "on January 19, 2006 Plaintiff filed an inmate request to staff directed to warden (SHERROD) about his current medical condition, also Sherrod took part in responding to Plaintiff['s] administrative remedy on November 1, 2005 claiming to have started an investigation [sic] . . . ." (*See* doc. # 36 at p. 5).  Mr. Martin has not pled that Defendant Sherrod had any personal participation in or any supervisory liability for the alleged violation of his Eighth Amendment rights.  There are no allegations that Defendant Sherrod had any direct contact with Mr. Martin, that he was present during or personally directed any of the violations alleged, or that he actually knew of or acquiesced in the alleged violations.  *See, e.g., Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989) (entry of judgment in favor of defendants was proper where plaintiff did not make a sufficient showing of any personal participation, direction, or knowledge by defendants).  The court concludes that Mr. Martin has failed to allege a basis for holding Defendant Sherrod individually liable under *Bivens* and that Defendant Sherrod is properly dismissed from this civil action.

D.      Stating a Claim for Violation of Eighth Amendment

Defendants argue that Mr. Martin fails to state a claim for violation of the Eighth Amendment because he has alleged no more than a difference of opinion as to what medical treatment is appropriate for his condition.

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).  Eighth Amendment claims alleging inadequate medical care "involve both an objective and a subjective component, such that we must determine both whether the deprivation is sufficiently serious and whether the [government] official acted with a sufficiently culpable state of mind."  *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001) (internal quotation marks and citation omitted).

Mr. Martin has alleged that Defendants abruptly discontinued his medication without consideration of the adverse side effects he was suffering and denied him access to a specialist.  (*See* Complaint (doc. # 3) at pp. 4-7 of 35).  The Tenth Circuit has recognized that "(1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing a inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition" may "constitute deliberate indifference in a prison medical case."  *Self v. Crum*, 439 F.3d 1227, 1231 (10th Cir.) (citing *Sealock v. Colorado*, 218 F.3d 1205, 1211 (10th Cir. 2000)), *cert. denied*, 127 S.Ct. 131 (2006).  Mr. Martin has pled that Defendants knew of his serious medical condition and despite this knowledge failed to ensure that he received proper treatment.  (*See* Complaint (doc. # 3) at pp. 4-7 of 35).  He has alleged that he repeatedly asked for treatment for the adverse side effects caused by the discontinuance of his medication and that Defendants did not respond. (*See* Complaint (doc. # 3) at pp. 4-7 of 35).

11

Defendants' arguments go beyond the standard of review on a motion to dismiss pursuant to Rule 12(b)(6).  (*See* Defendants' Motion (doc. # 29) at p. 10 ("plaintiff has failed to establish that any of the defendants knew about or disregarded any substantial risk of harm to Plaintiff" and "the record clearly shows that the defendants were actively pursuing a course of treatment in order to care for plaintiff's condition").  At this stage of the proceedings, the court cannot say that plaintiff can prove no set of facts in support of his claim for deliberate indifference to serious medical needs.  Taken in the light most favorable to Mr. Martin, as required, the allegations are sufficient to state a claim that Defendants violated his Eighth Amendment rights by deliberate indifference to his serious medical needs.

     E.     Qualified Immunity

Defendants further argue that they are entitled to qualified immunity.

> In order to promote the efficient administration of public services, the doctrine of qualified immunity shields government officials performing discretionary functions from individual liability under 42 U.S.C. § 1983 unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known.  Qualified immunity is an affirmative defense to a section 1983 action, providing immunity from suit from the outset.  Once a defendant asserts qualified immunity as a defense, the plaintiff must carry the burden of showing qualified immunity is not proper under the circumstances.  To do this, the plaintiff must show that (1) the defendant's conduct violated a constitutional right and (2) the law governing the conduct was clearly established at the time of the alleged violation.

*DeSpain v. Uphoff*, 264 F.3d 965, 971 (10th Cir. 2001) (internal quotation marks and citations omitted).  Prison officials are entitled to qualified immunity from suits for

damages brought under § 1983 "insofar as their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

A defendant presenting an immunity defense on a Rule 12(b)(6) motion must accept the standard of review applicable to this procedural route. The district court will review a motion to dismiss where a qualified immunity defense is asserted "under the customary motion to dismiss standard." *Currier v. Doran*, 242 F.3d 905, 917 (10th Cir. 2001). "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Currier*, 242 F.3d at 917 (internal quotation marks and citation omitted). The court must accept the well-pleaded allegations of the complaint as true and construe them in the light most favorable to the plaintiff. *Ramirez*, 222 F.3d at 1240 (citation omitted).

The first step in analyzing a qualified immunity defense is to ask whether the alleged conduct set out a constitutional violation. *Smith v. Cochran*, 339 F.3d 1205, 1211 (10th Cir. 2003). Mr. Martin has alleged that he was denied medication, denied proper treatment, and denied access to medical personnel capable of evaluating his condition. The second step in the analysis of qualified immunity is to ask whether "the constitutional standards [were] clearly established at the time in question." *Smith*, 339 F.3d at 1211. Claims for deliberate indifference to serious medical needs of prisoners have long been recognized under the Eighth Amendment. *See Estelle v. Gamble*, 429 U.S. at 97. Whether or not Mr. Martin's claim will be supported on summary judgment,

his allegations sufficiently state a claim for deliberate indifference to withstand a Rule 12(b)(6) motion.  *See, e.g., Self*, 439 F.3d at 1232 (on summary judgment motion, subjective component of deliberate indifference claim not satisfied where doctor simply resolves  whether additional diagnostic techniques or forms of treatment are indicated) (internal quotation marks and citation omitted).  To the extent that Defendants' Motion to Dismiss is based on qualified immunity, it is properly denied.

       F.     Failure to File Certificate of Review

Defendants argue that Mr. Martin's claim for violation of his Eighth Amendment rights must be dismissed because he did not file a certificate of review pursuant to Colo. Rev. Stat. § 13-20-602.  However, the court does not apply state substantive law such as Colo. Rev. Stat. § 13-20-602 to federal claims.  *See McLean v. Clough*, 2006 WL 650169 (D. Colo. March 10, 2006) ("§ 13-20-602 does not apply to Plaintiff's Eighth Amendment claim").  *See also Martin v. Duffie*, 463 F.2d 464, 467 (10th Cir. 1972) ("There are numerous other decisions which have recognized that the vindication of federal civil rights guaranteed by the Constitution is peculiarly subject to federal substantive law") (citations omitted).  Mr. Martin's failure to file a certificate of review pursuant to Colo. Rev. Stat. § 13-20-602 does not bar his Eighth Amendment claim.

IV.    Mr. Martin's Failure to Comply with Title 28 U.S.C. § 1915

On April 5, 2006, the court granted Mr. Martin leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915.  (*See* "Order Directing Clerk to Commence Civil

Action and Granting Plaintiff Leave to Proceed Pursuant to 28 U.S.C. § 1915" ("April 5, 2006 Order") (doc. # 2)).  Mr. Martin was permitted to proceed with this civil action by paying an initial partial filing fee of $18.00 and was ordered to pay the remainder of the required $250.00 filing fee through monthly installments.  (*See* April 5, 2006 Order). Title 28 U.S.C. §1915(b)(2) requires that a prisoner "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account."  Thus, the court ordered Mr. Martin to "make monthly payments to the court of twenty percent of the preceding month's income credited to his account or show cause why he has no assets and no means by which to make each monthly payment."  (*See* April 5, 2006 Order at p. 2).  Mr. Martin was directed that, in order to show cause, he "must file a current certified copy of his trust fund account statement."  (*See* April 5, 2006 Order at p. 2).  Mr. Martin was warned that failure to comply with these requirements may result in dismissal of his complaint without further notice.  (*See* April 5, 2006 Order at p. 3).

On July 21, 2006, the court again advised Mr. Martin that he is required to make monthly payments of twenty percent (20%) of the preceding month's income credited to his trust fund account or show cause each month why he has no assets and no means by which to make the monthly payment.  (*See* July 21, 2006 "Order Directing Plaintiff to Make Monthly Filing Fee Payment or to Show Cause" (doc. # 20)).  On December 1, 2006, the court granted "Plaintiff's Motion for Extension of Time of Monthly Payments," permitting Mr. Martin an extension of time up to December 15, 2006 and ordering Mr. Martin to make the monthly payments for November and December on or before December 15, 2005.  (*See* doc. # 40). Since submitting his $18.00 initial partial filing

15

fee on April 13, 2006 (*see* doc. # 6), Mr. Martin has made only four monthly partial filing

fee payments of $25.00 on August 10, 2006 (doc. # 21), $20.00 on January 31, 2007

(doc. # 42), $10.00 on February 6, 2007 (doc. # 43), and $25.00 on April 13, 2007 (doc.

#44).  In lieu of making monthly partial filing fee payments, Mr. Martin submitted on

September 11, 2006 one letter with two receipts (doc. # 23), purportedly demonstrating

why he has no assets and no means by which to make the monthly payments.

It is not sufficient for Mr. Martin to meet his monthly payment obligation only

when specifically directed by the court by an order to pay or show cause.  The court

has repeatedly directed Mr. Martin either to make the required monthly payments of

twenty percent (20%) of each month's income credited to his inmate trust account or

show cause why he cannot make the required monthly payments by filing a certified

copy of his inmate trust account statements.  The court has repeatedly warned Mr.

Martin that if he fails to comply with the partial filing fee payment requirements at any

time before the filing fee is paid in full, this civil action may be dismissed for failure to

comply with the court's orders and Title 28 U.S.C. § 1915.  Mr. Martin has failed to

sufficiently make the required payments or show cause why he has no assets and no

means by which to make the monthly payments, comply with 28 U.S.C. § 1915, or

comply with the court's April 5, 2006, July 21, 2006, and December 5, 2006 Orders.

For these reasons, dismissal without prejudice is appropriate.


A.      Statute Limitations May Bar Refiling Upon Dismissal Without Prejudice

Normally, if the court recommends dismissal without prejudice, the court need

16

not analyze the factors set forth in *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920 (10th Cir.

1992) (reviewing district court's dismissal of complaint with prejudice as sanction for

violation of discovery order).   *See Procter & Gamble Co. v. Haugen*, 427 F.3d 727,

738-40 (10th Cir. 2005) (district court abused its discretion by dismissing *with prejudice*

as sanction for failure to comply with district court's discovery order, without making

on-record consideration of *Ehrenhaus* factors) (emphasis added);   *Cosby v. Meadors*,

351 F.3d 1324, 1333-34 (10th Cir. 2003) (affirming dismissal *with prejudice* as sanction

for party's failure to comply with Federal Rules of Civil Procedure or any order of the

court, after review of *Ehrenhaus* factors)*, cert. denied*, 541 U.S. 1035 (2004) (emphasis

added);   *Rueb v. Morales*, 91 Fed. Appx. 95, 2004 WL 206310 (10th Cir. 2004)

(reversing dismissal *with prejudice* for failure to comply with show cause order where

neither magistrate judge nor district judge addressed *Ehrenhaus* factors) (emphasis

added).

However, the Tenth Circuit has emphasized that when the statute of limitations

would ban refiling of a case, even dismissal without prejudice is an extreme sanction

requiring that the trial court explain its reasons for imposing the sanction.   *See*

*Woodmore v. GitNGo*, 790 F.2d 1497, 1499 (10th Cir. 1986) ("when a case . . . is

dismissed without prejudice at a time when the statute of limitations would ban refiling,

a trial court must explain why it imposed the extreme sanction of dismissal").   *See also,*

*e.g., Shipp v. Widnall*, 1998 WL 873052 at *3 (10th Cir. December 16, 1998) ("Because

the district court effectively dismissed Ms. Shipp's case with prejudice, it had a duty to

explain why dismissal was an appropriate sanction"; failure to provide such an

17

explanation required remand for consideration of the *Ehrenhaus* factors).  *Cf. Florence*

*v. Decker*, 153 Fed. Appx. 478, 480 (10th Cir. 2005) (dismissal without prejudice was

appropriate where statute of limitations had not run and plaintiff was free to refile).

Here, the statute of limitations might bar refiling upon dismissal, even if the

dismissal were stated to be without prejudice.[1]  Thus, the court must analyze the factors

set forth in *Ehrenhaus v. Reynolds* in order to explain the recommended sanction of

dismissal.  965 F.2d 916, 920 (10th Cir. 1992) (reviewing district court's dismissal of

complaint with prejudice as sanction for violation of discovery order).  *See Gripe v. City*

*of Enid, Oklahoma*, 312 F.3d 1184, 1187 (10th Cir. 2002) ("dismissal as a sanction

under Rules 16(f) and 37(b)(2)(C) should ordinarily be evaluated under" *Ehrenhaus*

factors);  *Mobley v. McCormick*, 40 F.3d 337, 341 (10th Cir. 1994) (involuntary

dismissal pursuant to Fed. R. Civ. P. 41(b) "should be determined by reference to the

---

[1]  "A *Bivens* action is subject to the limitation period for an action under 42
U.S.C. § 1983, and that limitation period is set by the personal injury statute in the state
where the cause of action accrues."  *Roberts v. Barreras*, ___ F.3d ___, 2007 WL
1113956 at * 1 (10th Cir. (N.M.) April 16, 2007) (citations omitted).  In Colorado, the
limitation on personal injury claims is two years.  *See* Colo. Rev. Stat. § 13-80-102(g)
(establishing a two-year limitation period for "all actions upon liability created by a
federal statute where no period of limitation is provided in said federal statute" and for
"all other actions of every kind for which no other period of limitation is provided");
*Blake v. Dickason*, 997 F.2d 749, 750 (10th Cir.1993) (applying § 13-80-102 to § 1983
claim).
      "Although state law establishes the statute of limitations, federal law determines
when plaintiffs' federal *Bivens* claims accrued."  *Van Tu v. Koster*, 364 F.3d 1196, 1199
(10th Cir. 2004) (citing *Industrial Constructors Corp. v. U.S. Bureau of Reclamation*, 15
F.3d 963, 969 (10th Cir. 1994)), *cert. denied*, 543 U.S. 874 (2004).  "Under federal law,
the statute of limitations on a *Bivens* claim begins to run when the plaintiff knows or has
reason to know of the existence and cause of the injury which is the basis of his action."
*Van Tu*, 364 F.3d at 1199 (internal quotation marks and citation omitted).  Mr. Martin's
claims arise from events that he alleges commenced on or about April 2005.

*Ehrenhaus* criteria").

B.     Analysis of *Ehrenhaus* Factors

The *Ehrenhaus* criteria are "(1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; . . . (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal . . . would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions."  965 F.2d at 921 (internal quotation marks and citations omitted).  "These factors do not create a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction."  *Ehrenhaus*, 965 F.2d at 921.

While Mr. Martin has not complied with his obligations, the Defendants have been defending themselves from Mr. Martin's claims since this civil action was filed in 2006.  The court has expended its resources in repeatedly warning Mr. Martin of his obligations to comply with court orders and with Title 28 U.S.C. § 1915.  The record does not reveal that anyone other than Mr. Martin is culpable for his ongoing failure to comply with the court's Orders and Title 28 U.S.C. § 1915.  Mr. Martin has not adequately shown that he was unable to perform his obligations.  Mr. Martin was fully warned of the possibility of dismissal for failure to comply with the court's Orders and Title 28 U.S.C. § 1915.  There is no lesser sanction available under the circumstances, as it would be pointless to impose a financial sanction on a plaintiff who has failed to comply with previous court orders and statutory requirements for payment.  Dismissal is appropriate to enforce the court's Orders and Title 28 U.S.C. § 1915.

Accordingly,

**IT IS ORDERED** that defense counsel shall report to the court **on or before June 1, 2007** the status of the court's request (issued on or about May 25, 2006) for waiver of service by Defendant M.C. Ippolito.[2]

Further, **IT IS RECOMMENDED** that:

1.     Plaintiff's Motion for Preliminary Injunction (filed September 22, 2006) (doc. # 27) be DENIED.

2.      Defendants' Motion to Dismiss (filed September 25, 2006) (doc. # 29) be GRANTED IN PART to the extent that Defendant Sherrod be dismissed from this civil action and DENIED IN PART in all other respects.

3.     In the alternative, this civil action be DISMISSED without prejudice for Mr. Martin's repeated and continuing failure to comply with 28 U.S.C. § 1915 and the court's Orders.

**Advisement to the Parties**

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the magistrate judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of

---

[2]     The court issued a request for waiver of service to Defendant Ippolito on or about May 25, 2006.  The court record contains no indication from Defendant Ippolito whether service was effected or could not be waived.

Colorado.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b);  *In re Griego*, 64 F.3d 580, 583

(10th Cir. 1995).

The district judge shall make a *de novo* determination of those specific portions

of the proposed findings or recommendations to which specific objection is made.  28

U.S.C. § 636(b)(1).  A general objection that does not put the district court on notice of

the basis for the objection will not preserve the objection for *de novo* review.  *See In re*

*Griego*, 64 F.3d at 583;  *United States v. One Parcel of Real Property Known As 2121*

*East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996).  The district

judge may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge.  28 U.S.C. § 636(b)(1).

"[A] party's objections to the magistrate judge's report and recommendation must

be both timely and specific to preserve an issue for de novo review by the district court

or for appellate review."  *One Parcel of Real Property*, 73 F.3d at 1060.  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate

judge's proposed findings and recommendations and will result in a waiver of the right

to appeal from a judgment of the district court based on the proposed findings and

recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80

(10th Cir. 1999) (district court's decision to review a magistrate's recommendation *de*

*novo* despite the lack of an objection does not preclude application of the "firm waiver

rule");  *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the

magistrate judge's report and recommendation must be both timely and specific to

preserve an issue for *de novo* review by the district court or for appellate review);

21

*International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate's order, cross-claimant had waived its right to appeal those portions of the ruling);  *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate's ruling).  *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

DATED at Denver, Colorado, this 14th day of May, 2007.

BY THE COURT:


　　s/Craig B. Shaffer　　　　
United States Magistrate Judge